UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
GEORGE COLESON,

       *Plaintiff*,

        v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

       *Defendant*.
---------------------------------X

NOT FOR PUBLICATION

**MEMORANDUM AND ORDER**

18-cv-02862(KAM)

**MATSUMOTO, United States District Judge:**

       Pursuant to 42 U.S.C. § 405(g), George Coleson ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant" or "Commissioner"), which found that plaintiff was not eligible for disability insurance benefits under Title II of the Social Security Act (the "Act") on the basis that plaintiff is not disabled within the meaning of the Act.  Plaintiff alleges that he is disabled under the Act and is thus entitled to receive the aforementioned benefits.

       Presently before the court is plaintiff's motion for judgment on the pleadings (ECF No. 17), and defendant's cross-motion for judgment on the pleadings (ECF No. 19).  For the reasons stated below, defendant's motion is DENIED, plaintiff's motion is GRANTED, and the case is remanded for further proceedings consistent with this Memorandum and Order.

1

**BACKGROUND**

I.  **Procedural History**

On February 20, 2014, plaintiff filed an application for disability insurance benefits.  (ECF No. 1, Complaint ("Compl.") 1.)  Plaintiff alleges disability due to major depression, left knee injuries, tendonitis, PTSD, and flat feet. (ECF No. 23, Administrative Transcript ("Tr.") 147.)  His alleged disability onset date was April 1, 2011.  (*Id.* 113.)

On June 6, 2014, the Social Security Administration ("SSA") denied the plaintiff's application on the basis that he is not disabled.  (Tr. 68-71.)  On August 5, 2014, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* 72-73.)  On August 2, 2016, the plaintiff appeared *pro se* at a hearing before ALJ David Tobias.  (*Id.* 28-55.)  By decision dated January 13, 2017, the ALJ determined that plaintiff was not disabled within the meaning of the Act and was thus not entitled to benefits.  (*Id.* 11-27.)

On March 4, 2017, plaintiff appealed the ALJ's decision to the Appeals Council.  (Tr. 110-12.)  On November 21, 2017, the Appeals Council denied plaintiff's request for review, rendering the ALJ's decision final.  (*Id.* 5-10.)  On May 14, 2018, plaintiff filed the instant action in federal court. (*See generally* Compl.)

## II.   Hearing and Decision

On May 10, 2019, the parties in this matter submitted Joint Stipulated Facts (ECF No. 22), which the court incorporates by reference.  The court will additionally address those facts relevant to our decision.

On June 22, 2015, Citizens Disability, LLC ("Citizens Disability"), a Social Security Disability advocacy group, entered an appearance on behalf of plaintiff.  (Tr. 84.)  On June 9, 2016, approximately two months before the hearing, Citizens Disability withdrew as plaintiff's counsel.  (*Id.* 97.) At the hearing, ALJ Tobias advised plaintiff that he would adjourn the case in order for him to obtain a new representative, but he insisted on proceeding unrepresented. (*Id.* 30-31.)  The ALJ reviewed the list of exhibits with plaintiff as the hearing commenced, but did not advise plaintiff that additional evidence was necessary at that time.  (*Id.* 32-33.)

At the close of the hearing, the ALJ discussed with plaintiff the need for updated medical records from the Department of Veteran's Affairs ("VA"):

> **ALJ:** Okay.  I don't make a decision right here at the hearing.  I have to make a decision in writing in these cases.  But before I make a decision in your case, I am going to have my office request updated records from the VA because it looks likes there's probably quite a bit that I don't have.  The records leave off in like mid-2014, so it's really about 2

3

years of records we need.  I know you handed up some
stuff today, but I think there's still a lot more than
that.

**Plaintiff**:  Okay.

**ALJ**: So we are going to request that and it will take
some time to get those records.  Once I have
everything, than I'll try to issue a decision as soon
as possible.  I just want to ask you, when you came
into the office today, at the front window they
usually ask that you sign a form, a medical
authorization form.  You signed it?

**Plaintiff**:  Yes.

**ALJ**:  Okay.  Because we need that to obtain the
records.

**Plaintiff**:  Okay.

**ALJ**: All right.  There being nothing further, then
we'll close the hearing at this time.

(Tr. 54-55.)  On October 28, 2016, the ALJ sent a proffer of

evidence to plaintiff, advising that he had obtained additional

evidence identified as 14E to 16E, as well as 5F to 7F.[1]  (*Id.*

209-10.)  There is otherwise no indication in the record that

the ALJ requested or obtained any medical source statement from

the treating sources either at the time he requested the VA and

other records, or at any time thereafter.  (*See generally* Tr.)

### LEGAL STANDARD

Unsuccessful claimants for disability benefits under

the Act may bring an action in federal district court seeking

---

[1]      The additional evidence consisted of a Request for Vocational

judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3).  A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. *Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)) (internal quotation marks omitted).  If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g).  Inquiry into legal error "requires the court to ask whether 'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Moran v.*

*Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result.  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

　　　To receive disability benefits, claimants must be "disabled" within the meaning of the Act.  *See* 42 U.S.C. §§ 423(a), (d).  A claimant is disabled under the Act when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000).  The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work.  42 U.S.C. § 423(d)(2)(A).  "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'"  *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. This process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 404.152(a)(4). At any of the previously mentioned steps, if the answer is "no," then the analysis stops and the ALJ must find that claimant is not disabled under the Act.

During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits." 20 C.F.R. § 404.1523. Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process. 20 C.F.R. § 416.945(a)(2). In steps one through four of the sequential five-step framework, the

claimant bears the "general burden of proving . . . disability."
*Burgess*, 537 F.3d at 128.  At step five, the burden shifts from
the claimant to the Commissioner, requiring that the
Commissioner show that, in light of the claimant's RFC, age,
education, and work experience, the claimant is "able to engage
in gainful employment within the national economy." *Sobolewski
v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, federal regulations explicitly authorize a
court, when reviewing decisions of the SSA, to order further
proceedings when appropriate.  "The court shall have power to
enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."  42 U.S.C. § 405(g).  Remand is
warranted where "there are gaps in the administrative record or
the ALJ has applied an improper legal standard." *Rosa v.
Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v.
Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks
omitted).  Remand is particularly appropriate where further
findings or explanation will clarify the rationale for the ALJ's
decision. *Pratts*, 94 F.3d at 39.  However, if the record before
the court provides "persuasive proof of disability and a remand
for further evidentiary proceedings would serve no purpose," the
court may reverse and remand solely for the calculation and

payment of benefits.  *See, e.g.*, *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

## DISCUSSION

### I.  The ALJ's Disability Determination

Using the five-step sequential process to determine whether a claimant is disabled as mandated by 20 C.F.R. § 416.971, the ALJ determined at step one that plaintiff had engaged in substantial gainful activity since the alleged 2011 onset date, during the period of September 2014 through June 2015, but that there had been a continuous period of at least twelve months in which he did not engage in substantial gainful activity.  (Tr. 16.)

At step two, the ALJ found that the plaintiff suffered from the severe impairments of major depressive disorder, post-traumatic stress disorder (PTSD), personality disorder, alcohol dependence, and cannabis dependence.  (*Id.* 16.)  The ALJ found that plaintiff suffered from the non-severe conditions of past bunionectomy, flatfeet, hammertoes, 2nd- and 3rd-digit arthrodesis, foot callous, and left knee patellofemoral syndrome.  (*Id.* 16-17.)

At step three, the ALJ determined that from the alleged onset in 2011, through the date of the decision, plaintiff did not have an impairment or combination of

impairments that met or medically equaled one of the listed
impairments in Appendix 1 of the regulations, 20 C.F.R. §
404.1520, Appendix 1 (20 C.F.R. §§ 416.920(d) and 416.926),
although the ALJ considered Listings 12.04, 12.06, 12.08 and
12.09.  (Tr. 17-18.)  The ALJ found that plaintiff would be
capable of performing "a full range of work at all exertional
levels but with the following nonexertional limitations: the
claimant is limited to work that does not involve more than
occasional, superficial interaction with coworkers or the
public; and, he is limited to work that does not require the
ability to carry out complex tasks or instructions."  (*Id.* 18.)

At step four, the ALJ concluded that plaintiff was
unable to perform his past relevant work as a security guard, a
dining room attendant, or an infantry weapons crew member, based
on the vocational expert's report that a person with plaintiff's
residual functional capacity could not return to his past work
as performed or as generally performed in the national economy.
(Tr. 21-22.)  At step five, the ALJ found that plaintiff was
capable of performing work that was available in the national
economy from April 1, 2011, through the date of the decision, as
a garment bagger, a price marker, or a hand packager.  (*Id.* 22-
23.)  Thus, the ALJ concluded that plaintiff was not disabled
within the meaning of the Act.  (*Id.* 23.)

10

The ALJ's decision gave "great weight" to the opinion of Dr. Johanina McCormick, Ph. D., the consultative examiner, without any exception noted.  (Tr. 21.)  Dr. McCormick's mental status examination of plaintiff revealed a poor manner of relating, poor social presentation, getting sidetracked answering questions, poor grooming, a depressed affect, a dysthymic mood, mildly impaired attention and concentration, moderately impaired memory, fair insight, and fair judgment. (*Id.* 304-305).  Dr. McCormick diagnosed unspecified depressive disorder, provisional, and PTSD, provisional.  (*Id.* 306.)  Dr. McCormick further opined that plaintiff was markedly limited in his ability to deal with stress and moderately to markedly limited in his ability to maintain a regular schedule and perform complex tasks independently with needed supervision; moderately limited in his ability to relate to others.  (*Id.* 305.)  Despite assigning great weight to Dr. McCormick's assessment, the ALJ's mental Residual Functional Capacity ("RFC") finding that plaintiff was limited to work that does not require more than occasional, superficial interactions with co-workers or the public, and limited to work that does not require the ability to carry out complex tasks or instructions, did not account for the restrictions noted by Dr. McCormick.  (*See id.* 21.)

Additionally, the ALJ gave "little weight" to the opinion of podiatrist Dr. Michal Kauf-Stern, DPM, "that the claimant could not bear weight on his left foot for extended periods of time, thereby making physical employment not possible that this time." (*Id.*)  There was no additional explanation given.  Finally, the ALJ gave "little weight" to the VA's determination that plaintiff has been disabled since 2008 and has a 80% disability because the VA uses different legal standards for determining disability than the SSA.  (*Id.*)  Again, no further explanation was provided in the ALJ's decision.

## II.  The ALJ Failed to Develop the Record

Plaintiff asserts the ALJ failed to develop the record.  The court agrees.  The ALJ erred by failing to request a medical source statement from the treating psychiatrist at the VA Medical Center ("VAMC").  "The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel." *Shaw,* 221 F.3d at 131.  Thus, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Burgess*, 537 F.3d at 129 (quoting *Rosa*, 168 F.3d at 79).  "[W]here . . . an ALJ concludes that the opinions or reports rendered by a claimant's treating physicians lack objective

12

clinical findings, she may not reject the opinion as unsupported by objective medical evidence without taking affirmative steps to develop the record in this regard." *Rivas v. Barnhart*, No. 01-cv-3672(RWS), 2005 WL 183139, at *23 (S.D.N.Y. Jan. 27, 2005). An ALJ's duty to develop the record is heightened with respect to a *pro se* claimant. *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 509 (2d Cir. 2009). "The Commissioner of Social Security is not obligated to provide a claimant with counsel, but where a claimant proceeds *pro se,* the ALJ has a duty 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Hankerson v. Harris,* 636 F.2d 893, 895 (2d Cir. 1980) (internal quotation marks omitted); *accord Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir. 1990) (describing an ALJ's "heightened duty").

   The record makes clear that the ALJ should have requested additional information from the specialist treating plaintiff. Plaintiff received extensive treatment at the VAMC from 2001 through 2016, including numerous psychiatric hospitalizations for depression and other psychiatric disorders, therapy for his conditions, and drug prescriptions. (Tr. 233-40, 254-55, 258-60, 263-64, 317, 319-331, 339-40, 344-45, 357-58, 361-66, 371-72, 376-81, 398-99, 415-17, 594-55, 642, 645, 675-77, 710, 713-14, 732-34, 860-61, 899, 918, 937.) The ALJ questioned plaintiff's credibility because there was no medical

opinion from a treating source (*see id.* 20 ("[T]he record does not contain any opinions from treating or examining physicians indicating that the claimant is currently disabled.")), but never advised plaintiff of the need for a physician's opinion at the time of the hearing.  (*Id.* 32, 54-55.)  Despite finding that plaintiff suffered from the severe impairments of major depressive disorder, PTSD, and personality disorder, he did not take steps to obtain a medical source statement on behalf of the *pro se* party, and then proceeded to make a negative inference that there was no such statement in the file.  (*Id.* 20.)

Even if the ALJ had not made a finding against plaintiff's credibility, it was error that the ALJ did not request a medical source statement from the treating specialist, given the plaintiff's *pro se* status.  An ALJ must "request medical source statements from a [claimant]'s treating sources . . . regardless of whether [the] medical record otherwise appears complete."  *Williams v. Colvin*, No. 14-CV-1403 (NGG), 2016 WL 4257547, at *6 (E.D.N.Y. Aug. 11, 2016) (quoting *Pettaway v. Colvin*, No. 12-CV-2914 (NGG), 2014 WL 2526617, at *5 (E.D.N.Y. June 4, 2014)(citation and internal quotation marks omitted)).  Here, the record did not appear complete, and the ALJ stated as much at the close of the hearing.  (Tr. 54 ("The records leave off in like mid-2014, so it's really about two years of records that we need.  I know you handed up some stuff today, but I

think there's still a lot more than that.").)  The ALJ erred by
not requesting a medical source statement, and compounded that
error by *de facto* penalizing plaintiff for the lack of a
treating source opinion, thus implying that the duty to obtain
such records and opinion rested with the *pro se* plaintiff, and
not with the ALJ.

## III.   The ALJ Violated the Treating Physician Rule

Plaintiff argues that the ALJ erred in assigning
little weight to the opinion of the treating podiatrist, Dr.
Kauf-Stern.  The court finds that the ALJ's disregard of an
acceptable medical source opinion without explanation violated
the "treating physician rule," and was thus error.[2]

Under SSA regulations, every medical opinion in the
administrative record must be evaluated, "[r]egardless of its
source," when determining whether a claimant is disabled.  20
C.F.R. §§ 404.1527(c), 416.927(c).  The ALJ must evaluate each
source, considering factors such as a source's relationship with
the claimant, the supportability of the opinion, the consistency
of the opinion with the record as a whole, the specialization of

---

[2]     The Commissioner has revised the SSA's rules to eliminate the treating
physician rule, and ALJs are now to weigh all medical evaluations, regardless
of their sources, based on how well supported they are and their consistency
with the remainder of the record.  *See* 20 C.F.R. §§ 404.1520b; 416.920c.
Claims filed before March 27, 2017, however, are still subject to the
treating physician rule, *see id.* § 404.1527(c)(2), and the court accordingly
applies the rule to this case, as plaintiff filed his claim on April 10,
2011.  *See, e.g.*, *Conetta v. Berryhill*, 365 F. Supp. 3d 383, 395 n.5
(S.D.N.Y. 2019).

the medical source, and any other relevant factors that tend to support or contradict the medical opinion. *Id.* § 404.1527(c). The ALJ must finally determine how much weight to assign each opinion based on these factors. *Id.*

The medical opinion of a treating physician or psychologist will be given "controlling" weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Id.* § 416.927(c)(2); *see also Burgess*, 537 F.3d at 128 (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)) (describing this principle as the "treating physician" rule). A treating source is defined as a plaintiff's "own physician, psychologist, or other acceptable medical source" who has provided plaintiff "with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the plaintiff]." 20 C.F.R. § 404.1502; *see also Bailey v. Astrue*, 815 F. Supp. 2d 590, 597 (E.D.N.Y. 2011). Medically acceptable clinical and laboratory diagnostic techniques include consideration of a "patient's report of complaints, or history, [as] an essential diagnostic tool." *Green-Younger*, 335 F.3d at 107.

When a treating physician's opinion is not afforded controlling weight, the ALJ must "comprehensively set forth

reasons for the weight assigned to a treating physician's opinion." *Halloran*, 362 F.3d at 33; *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); 20 C.F.R. § 416.927(c)(2) (requiring SSA to "always give 'good reasons' in [its] notice of determination or decision for the weight [given to a] treating source's medical opinion"). The regulations enumerate several factors that may guide an ALJ's determination of what weight to give a treating source opinion: "(1) the length, frequency, nature, and extent of the treating relationship, (2) the supportability of the treating source opinion, (3) the consistency of the opinion with the rest of the record, (4) the specialization of the treating physician, and (5) any other relevant factors." 20 C.F.R. § 416.927(c)(2)-(6). Failure "to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012); *see also Halloran*, 362 F.3d at 32-33. These same factors may guide an ALJ's evaluation of the opinions of non-treating sources. *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010) (citing Social Security Ruling ("SSR") 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006)).

Dr. Kauf-Stern was undoubtedly a licensed podiatrist. Thus, he was an "acceptable medical source" to opine on plaintiff's ability to bear weight on his left foot. The

17

regulations required the ALJ to either give controlling weight
to his opinion, or to explain why he did not give it controlling
weight.  The ALJ did neither.  Accordingly, the court finds the
ALJ failed to properly apply the treating physician rule or give
any reason for not doing so.

## IV.   The ALJ Erred By Disregarding the Opinion of Dr. McCormick

          Although the ALJ gave great weight to the opinion of
Dr. McCormick, the ALJ's decision neither adopted nor
acknowledged Dr. McCormick's critical finding that plaintiff's
ability to deal with stress was markedly impaired, as was his
ability to maintain a work schedule.  (*See* Tr. 305.)  Rather,
the ALJ's mental RFC finding that plaintiff was limited to work
that does not require more than occasional, superficial
interactions with co-workers or the public, and limited to work
that does not require the ability to carry out complex tasks or
instructions, fails to account for the restrictions documented
by Dr. McCormick.  The ALJ's failure to explain the discrepancy
between the RFC finding and Dr. McCormick's opinion, on which he
purportedly relied, is reversible error.  *See* SSR 96-8p, 1996 WL
374184 (directing that when an RFC conflicts with a medical
source opinion, the ALJ "must explain why the opinion was not
adopted"); *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289
(E.D.N.Y. 2004) ("It is not proper for the ALJ to simply pick
and choose from the transcript only such evidence that supports

his determination, without affording consideration to evidence supporting the plaintiff's claims") (citing *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975), and *Lopez v. Sec'y of Dept. of Health and Human Srvcs.*, 728 F.2d 148, 150-51 (2d Cir. 1984)); *cf. Robinson v. Barnhart,* 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of non-disability.").  It was also legal error for the ALJ to create a RFC which conflicts with portions of the medical source statement to which he accorded great weight without explaining the inconsistency.  *See Peterson v. Astrue*, 2 F.Supp.3d 223, 234-35 (N.D.N.Y. 2012); *Dioguardi v Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006).

Finally, defendant argues that the ALJ's decision is supported by substantial evidence. However, "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."  *Meadors v. Astrue*, 370 F. App'x 179, 184 (2d Cir. 2010) (citation and internal quotation marks omitted). Therefore, the defects in the ALJ's reasoning do not remove the

need to inquire whether the ALJ's decision is supported by substantial evidence.

**V.    The ALJ Erred By Not Clarifying His Basis For Assigning "Little Weight" to the VA's Disability Determination**

Plaintiff contends the ALJ erred by assigning "little weight" to the VA's disability determination based solely on differing disability standards applied by the VA and SSA. Although determinations "made by another agency regarding a claimant's disability is not binding on the [SSA]," outside agency determinations are "entitled to some weight and should be considered." *Hankerson v. Harris*, 636 F.2d 893, 897 (2d Cir. 1980) (citing 20 C.F.R. § 404.1504); *see also Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013); *Machia v. Astrue*, 670 F. Supp. 2d 326, 334 (D. Vt. 2009) ("In the Second Circuit, the VA's determination of disability is generally entitled to 'some weight,' though it is not dispositive on the issue of whether a claimant is disabled for the purpose of Social Security benefits."). The applicable SSA regulations also state that the Commissioner "should explain the consideration given to [other governmental agencies'] decisions[.]"  SSR 06-03p, 2006 WL 2329939, at *7; *see also* 20 C.F.R. § 404.1504.[3]  The ALJ failed

---

[3]     On March 27, 2017, the SSA published revised regulations stating that an ALJ need not take into account decisions made by other governmental agencies, including VA disability decisions, regarding a Social Security applicant's disability. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5864 (Jan. 18, 2017), 2017 WL 168819, 20 C.F.R. § 404.1504 (2017).  As the Commissioner concedes, however, the new

to explain what consideration he gave to the VA's disability determination when he assigned it little weight.  On remand, the ALJ is respectfully directed to clarify whether he is giving the VA's disability assessment of plaintiff no weight, or *some* weight, and to clarify his reasons for doing so.

---

regulations do not apply to the instant case.  (ECF No. 15, Def.'s Mem. 21.)

## CONCLUSION

For the reasons stated above, plaintiff's cross-motion for judgment on the pleadings is GRANTED, and defendant's motion for judgment on the pleadings is DENIED. The court remands this action for further proceedings consistent with this Memorandum and Order. Specifically, the ALJ shall: (1) develop the record by requesting a medical source statement from the treating psychiatrist at the VAMC; (2) afford appropriate weight to the opinion of plaintiff's treating podiatrist, Dr. Kauf-Stern, as mandated by the "treating physician rule;" (3) revise his findings with respect to plaintiff's mental RFC in light of Dr. McCormick's assessment that plaintiff's ability to deal with stress is markedly impaired, and that his ability to maintain a work schedule is moderately to markedly impaired; (4) clarify whether he is giving the VA's disability assessment of plaintiff no weight, or *some* weight, and to clarify his reasons for doing so. The clerk of court is respectfully directed to close this case.

**SO ORDERED.**

Dated:   Brooklyn, New York
         April 26, 2020

                                   _____
                                          /s/
                                   Hon. Kiyo A. Matsumoto
                                   United States District Judge